OPINION OF THE COURT
Vincent R. Balletta, J.
This is an article 78 proceeding instituted by and on behalf of certain former residents of what is commonly known as the Jones Institute. In 1836, Samuel Jones, a resident of the Town of Oyster Bay, died and left a will which was admitted to probate in the Surrogate’s Court, Queens County, on August 22, 1836. Under his will, Samuel Jones sought to establish what is today commonly known as the Jones Fund.
In that regard, his will stated: “Item, I order and direct my said Executors, after the payments of the annuity herein before mentioned to my widow, and retaining a reasonable compensation for their care and trouble in and about the execution of this my last will and testament, to pay the said sum of thirty thousand dollars, together with such interest as shall have accrued thereon, to five trustees *532 to be appointed by the Legislature of the State of New York, on the joint application of the two towns of Oyster-bay and North Hempstead, three of whom shall always be freeholders and inhabitants of the said town of Oysterbay and two of the same description, of the said town of North Hempstead, and to be denominated ‘The Trustees of the Jones fund for the support of the poor’ to be held by the said trustees and their successors, the order or mode of succession of whom shall be such as the said Legislature, in its wisdom, shall prescribe, subject to the payment of the said annuity to my said widow, by them, punctually as herein before directed, In Trust forever, for the use of the poor of the said towns respectively, as hereinafter particularly directed and restricted; but should not the avails of my estate, not herein before disposed of, amount to the said sum of thirty thousand dollars, then I order and direct my said Executors to invest all the said moneys in good and sufficient security, by bond and mortgage or in some safe and profitable institution, until the principal sum, together with the interest added thereunto, shall amount to the said sum of thirty thousand dollars, when, after having punctually paid the said annuity to my said widow and retained such reasonable sum for their compensation, as herein before mentioned, I further order and direct my said executors to pay the said sum of thirty thousand dollars to the said trustees; to be and remain a permanent fund from the interest of which support shall be afforded to the poor of said towns respectively *** it is my will, that the poor who are to receive support from the said fund, should be kept in some suitable place where such of them as are able may be engaged in some manual employment. And I do hereby further declare the sole object of the fund to be, that it is created and intended to be and remain to and for the exclusive use of the poor of the said towns respectively * * * The whole fund shall be rendered and continued accumulative, subject to the payment of the said annuity to my said widow, as herein before directed, punctually; and subject to the inspection of the Chancellor of the State of New York.”
After the will was admitted to probate, the State Legislature, in 1838, enacted legislation appointing five trustees *533 to what was from that time forward called the Jones Fund. The legislation concerning the Jones Fund is now currently codified in sections 246 through 253 of the Nassau County Civil Divisions Act (L 1939, ch 273, as amd).
As indicated by the respondent trustees, the early history of the Jones Fund and its operation is “sketchy and uncertain”, but it is clear that in 1914 the Jones Fund acquired 20 acres of property on West John Street in Hicksville, New York. Thereafter, a building was erected in 1950 which was used and operated as a home for the indigent until September, 1980, when it was closed and its residents transferred to other facilities. Prior to its closing and on May 14,1980, at a special meeting of the trustees, a resolution was passed accepting an offer of the respondent, King Kullen Grocery Co., Inc., to purchase the premises for a total purchase price of approximately two million dollars. On June 10, 1980 a formal contract was entered into between King Kullen and the trustees, and on June 16, 1980, at a regular meeting, a resolution was adopted to close the operation of the institute and to relocate the present residents. It is the closing of the institute and the sale to King Kullen which is the subject of this lawsuit.
Petitioners assert in their petition nine grounds for relief, which may be summarized as follows:
Ground 1: Violation of the State Open Meetings Law (Public Officers Law, § 95 et seq.). Petitioners assert that the trustees’ meeting on May 14 and June 16, 1980 violated the Open Meetings Law in that no notice was given and in that the meetings were not open to the public. Petitioners seek a declaration that any action taken at these meetings be declared null and void.
Ground 2: The respondent trustees should be directed to enter into an agreement with respondent Purcell to provide that the Jones Institute will receive and care for all persons committed thereto. The petitioners base this ground for relief upon section 253 of the Nassau County Civil Divisions Act.
Grounds 3 and 4: The petitioners seek to remove the respondent trustees for alleged breaches of fiduciary duties and seek to have them replaced by successor trustees.
*534 Ground 5: The petitioners seek an order directing the respondents to renovate and rebuild the institute or to build an additional institute so as to provide the care and services set forth in the will of Samuel Jones and to fulfill the purposes of the Nassau County Civil Divisions Act.
Grounds 6, 8 and 9: The petitioners seek a declaration that the respondents, in closing the institute, have entered into a conspiracy to deprive certain of the petitioners of equal protection of the law, in violation of the United States Constitution and sections of 1983 and 1985 of title 42 of the United States Code. In addition, these grounds seek money damages and attorney’s fees pursuant to section 1988 of title 42 of the United States Code.
Ground 7: Petitioners seek an order directing the respondents to file an annual report with each of the towns, pursuant to section 250 of the Nassau County Civil Divisions Act.
The court now has before it the various motions of all the respondents to dismiss the within proceeding. Before proceeding to an individual consideration of each of the nine “grounds for relief ”, it must be pointed out that the petitioners have on two prior occasions attempted to have the subject of the within sale determined by a court.
By order to show cause dated October 14, 1980, the petitioners moved in the Surrogate’s Court of Queens County for an order construing the will of Samuel Jones and declaring that the decision of the trustees to sell the land was contrary to the intent of the testator. The motion also sought to remove the trustees, and other incidental relief. The court would note that upon signing the order to show cause, Surrogate Laurino struck out all requests for relief except that he indicated the motion would be limited solely to a construction of Mr. Jones’ will.
By memorandum decision dated February 9, 1981, Surrogate Laurino held it was within the province of the trustees to sell the land which is the subject of the instant proceeding. In pertinent part, the Surrogate held: “As ably demonstrated by the documentary proof before the court, this decision to sell was not the product of whim or caprice but, in fact, based on sound business judgment to abandon *535 a building and a location which had become inappropriate for attending to the needs of the ‘poor’ * * * Moreover, no proof has been submitted to show that the contracted sale price is less than full market value.”
The Surrogate went on to indicate that the trustees had the discretionary power to determine what location to use for housing the poor, and further: “There is nothing in the papers before the court which would even suggest that the ‘trustees’ acted in excess of the powers conferred on them or contrary to the duties imposed on them. While it may have been the better approach, the ‘trustees’ did not *** need the prior advice or approval of this court for the sale of the premises nor were they required to seek the advice of members of the community or the reasons for the sale and their plans for the future.”
Also, on October 14, 1980, the petitioners obtained an order to show cause from Judge George G. Pratt of the United States District Court, Eastern District. The order to show cause sought an order declaring that the civil rights of the Jones beneficiaries had been violated. This order to show cause contained a temporary restraining order pending the hearing of the motion, restraining the respondents from selling any of the personal property within the Jones Institute Building, and further, from demolishing the building. On October 14, 1980, at 4:30 p.m., the same day the order to show cause was signed, Judge Pratt denied the motion alleging that although the action by the trustees constituted State action, he indicated that none of the petitioners’ constitutional rights were infringed by the auction of the contents of the building.
On November 5, 1980, the petitioners filed a lis pendens against the subject property in the office of the Clerk of the County of Nassau. The notice cited the proceeding before Surrogate Laurino and also made reference to the Federal action which had been dismissed by Judge Pratt. On motion of the trustees, Surrogate Laurino vacated the notice of lis pendens. Thereafter, on March 14, 1981, a second lis pendens covering this action was filed. In connection with the motion to dismiss, the respondents also seek to vacate this notice of pendency.
*536 After a careful review of the petitioners’ asserted nine grounds for relief, the court is convinced that, as a matter of law, each and every one must be dismissed.
With respect to the first grounds based upon alleged violations of the Open Meetings Law (Public Officers Law, § 95 et seq.) it is clear that the respondent trustees do not come within the definition of a public body so as to require compliance with the Open Meetings Law. Section 97 of the Public Officers Law defines a public body as: “ ‘Public body’ means any entity, for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function for the state or for an agency or department thereof, or for a public corporation as defined in section sixty-six of the general construction law, or committee or subcommittee or other similar body of such public body.”
In the instant action, the trustees, although appointed by the Supervisors of the Town of North Hempstead and the Town of Oyster Bay, do not compose a public body. Their sole function and basis for existence is to carry out the testamentary wishes of Samuel Jones as enunciated in his will. The petitioners place great reliance on Matter of MFY Legal Servs. v Toia (93 Misc 2d 147). In that case, Special Term held that the medical advisory committee created by the Social Services Law was a public body within the meaning of the Public Officers Law. In that case, the court noted that the sole function of the committee pursuant to statute, was to advise the State Commissioner of Social Services, and further, that the Commissioner of Social Services was in some instances prohibited from acting before he received that advice. The court held (supra, p 148) that:
“[T]he giving of advice by the committee either on their own volition or at the request of the commissioner is a necessary governmental function for the proper actions of the Social Services Department.
“The members of the committee, being appointed by the Governor for a fixed term to a position created by statute, are holders of a public office.”
As distinguished from the medical advisory committee, the respondent trustees herein, although appointed by *537 their respective supervisors, are appointed to positions created by and under the terms of the will of a decedent. Clearly, they cannot and should not be held to be public officers within the purview of the Open Meetings Law. Furthermore, even were this court to hold the respondent trustees to be public officers, such a declaration would not require this court to annul the determinations taken at the May 14 and June 16,1980 meetings. Indeed, section 102 of the Public Officers Law states in pertinent part: “the court shall have the power, in its discretion, upon good cause shown, to declare any action or part thereof taken in violation of this article void in whole or in part.” (Emphasis supplied.)
Violation of the statute itself is not sufficient, and the burden is on the petitioners to establish good cause. (Matter of New York Univ. v Whalen, 46 NY2d 734.) Using the Public Officers Law to annul the determination of a public body is not a remedy to be lightly granted. (Matter of MFY Legal Servs. v Toia, supra.) It is doubtful that the respondent trustees would have considered themselves to be public officers so as to compel compliance with the Open Meetings Law, and under such circumstances, even were the court to hold the statute applicable, it would be improper to vitiate their action in failing to comply with the statute. (Addesso v Sharpe, 44 NY2d 925.)
With respect to the second asserted grounds for relief wherein the petitioners seek to compel the trustees of the respondent county to enter into an agreement to subsidize the operation of the Jones Institute, the petitioners rely upon section 253 of the Nassau County Civil Divisions Act, which states:
“Upon the execution of an agreement by the county and the trustees as hereinafter set forth, the board of supervisors shall include in the annual budget of the county for the department of public welfare such amount which, added to the income derived from such fund, it shall deem sufficient to pay the expenses of operating and maintaining such institute. Such trustees shall submit to the board of public welfare, on or before the first day of September in each year, the proposed budget of the Jones Institute for *538 the next succeeding year. There shall be included in such budget:
“1. The estimated revenues from the trust funds created by the wills of Samuel Jones and Walter R Jones.
“2. The amount deemed necessary for the operation and maintenance of such Jones Institute.”
An examination of the statute clearly indicates that the foregoing is a permissive rather than a mandatory statute as suggested by the petitioners. Although the statute uses the word “shall”, which implies a mandate to perform a certain act, the court notes that such mandatory language is contained in the statute only after the trustees and the county have entered into an agreement. The first portion of the statute does not mandate the agreement, but only states that upon execution of the agreement, then and in that event, the board of supervisors is mandated to perform a certain act. Since this second grounds for relief lies in mandamus, and since the language of the statute is not mandatory, as petitioners contend, this court is without jurisdiction to direct any action by the board of supervisors and the trustees. (Peirez v Caso, 72 AD2d 797.)
The third and fourth grounds basically allege a breach of fiduciary duty by the trustees and seek an order directing respondents Colby and Tully to appoint successor trustees. The breach of fiduciary duty which is alleged by the petitioners concerns the sale of the Jones Institute real property and the issue of what is to be done with the proceeds of said sale. The proceedings before Surrogate Laurino of Queens County preclude this court from reviewing these matters based upon the doctrines of res judicata and collateral estoppel.
The foregoing doctrines prevent a party from asserting a particular proposition of law or fact when the issue to be determined has already been decided in a prior action. With respect to res judicata, the prior action grows out of the same cause of action, whereas with respect to collateral estoppel, the prior action did not involve the same cause of action. (Weinstein-Korn-Miller, NY Civ Prac, par 5011.08.) The underlying reasoning for establishing the rules of res judicata and collateral estoppel is that once an *539 issue has been determined as between the same parties, it should not be relitigated.
Once a court of competent jurisdiction has rendered a judgment in an action, that judgment is conclusive on the issues of fact and questions of law necessarily decided therein in any subsequent action.' There are two basic requirements which must be met in order to bar litigants in a subsequent action: (1) there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action; and (2) there must have been a full and fair opportunity to test the decision now said to be controlling. (Schwartz v Public Administrator of County of Bronx, 24 NY2d 65.) Furthermore, even though in the second action the parties set forth different “causes of action”, where the “causes of action” concern the same alleged wrongdoing as the first action, res judicata and collateral estoppel will apply. As was stated by the Court of Appeals in Matter of Reilly v Reid (45 NY2d 24, 29, 30):
“A ‘cause of action’ may denote one of several separately stated claims in a pleading based on the same congeries of facts but related to different legal theories of recovery. A ‘cause of action’ may also denote a separately stated claim on the same congeries of facts, but for different legal relief. But even if there are variations in the facts alleged, or different relief is sought, the separately stated ‘causes of action’ may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought. In the sense of res judicata or claim preclusion, although there may be separately stated or statable causes of action, they are nevertheless based on the ‘same' cause of action’, to which the consequential test defined in the Schuylkill case (supra) applies. Nor will differences in legal theory generally avail to permit relitigation of claims based on the same gravamen * * *
“Where the same foundation facts serve as a predicate for each proceeding, differences in legal theory and consequent remedy do not create a separate cause of action”.
In this third and fourth grounds for relief, as indicated above, the primary relief sought is stopping the proposed sale of the property to respondent King Kullen Grocery Co. *540 This is the third attempt by the petitioners to accomplish that purpose. Surrogate Laurino has already determined that the trustees had the power and authority to sell the real property and that they exercised their power in a reasonable manner. The trustees have been directed to submit their plans for the future of the trust to the Surrogate, and if they fail to do so, the Attorney-General has been directed to commence any proceedings he deems appropriate to compel them to act in accordance with the trust. Surrogate Laurino properly had jurisdiction over the issues concerning the propriety of the sale, and under the principles of res judicata and collateral estoppel, his decision ousts the court of jurisdiction on that question. In the instant proceeding, while the legal theories and the relief sought in the third and fourth grounds may ostensibly differ from the Queens County Surrogate’s Court proceeding, the variations are nevertheless grounded on the same gravamen of the wrong upon which the Surrogate’s Court action was brought. Accordingly, the doctrines of res judicata and collateral estoppel bar reconsideration by this court. (Matter of Reilly v Reid, supra.) Until the plan has been submitted and approved or rejected, or unless the trustees fail to submit a plan and a further proceeding is instituted, there is no controversy properly before this court.
The fifth grounds for relief relies upon section 249 of the Nassau County Civil Divisions Act, which provides in pertinent part as follows: “The trustees of such fund * * * 6. Shall make such rules and regulations for the government of Jones Institute, as will secure the object of the testator.”
The petitioners seek an order of this court directing the respondents to adopt all necessary rules and regulations and also to set forth the plan “for the maximum utilization of the institute for the needs of the poor”. Just as res judicata and collateral estoppel bar consideration of the third and fourth grounds, so also do they bar consideration of the fifth grounds. This issue was directly before Surrogate Laurino in his construction of the Jones will, and in fact he did retain jurisdiction of the matter and has directed the trustees to file a further plan with him with *541 respect to their proposed continued management of the Jones Fund so as to best carry out the objectives of the testator.
The sixth, eighth, and ninth grounds allege a violation and a conspiracy to violate the United States Constitution and the equal protection and due process rights of the petitioners, and seek damages and attorney’s fees. A cursory review of the factual allegations reveals that there is not even a scintilla of proof that there is a violation of anyone’s equal rights or due process. The petitioners assert that equal protection and due process was denied by the respondents since they allege that the former residents were transferred to other facilities without “due process hearings”. In support of this proposition, the petitioners rely upon Yaretsky v Blum (592 F2d 65, mod 629 F2d 817). Petitioners assert that Yaretsky requires a due process hearing before any nursing home patient may be transferred from a particular facility. A careful reading of Yaretsky, however, does not support the petitioners’ position. Yaretsky simply concerns itself with the issue of what safeguards a patient is entitled to when there is a transfer from one level of care to another. In the instant action, there is no allegation that there has been a transfer from one level of care to another — merely a statement by the petitioners that there has been a transfer, a fact conceded by the respondent trustees. Furthermore, this proposition is supported by Judge Pratt in his decision to deny the temporary restraining order and preliminary injunction wherein he stated: “Motion heard on telephone notice on 10/14/80 at 4:30 p.m. Motion denied on grounds that although action by defendant Trustees constitutes ‘state action’, none of plaintiffs’ constitutional rights are infringed by the auction of the contents of the building scheduled for 10/15/80. Therefore application for TRO & preliminary injunction are denied.”
With respect to the seventh grounds seeking an order directing the respondents to comply with section 250 of the Nassau County Civil Divisions Act, and to file an annual report certified by a public accountant, it is uncontroverted that in fact the report in question is filed on an annual basis. Although the report is not certified by a public *542 accountant, the statute contains no such requirement, and accordingly, this court may not on its own initiative read such a requirement into the statute. Therefore, the seventh grounds is also dismissed.
The court is fully cognizant of the efforts by counsel for the petitioners to give them every possible protection under the law. Counsel is to be commended for making such extreme efforts on behalf of the petitioners. Continuous efforts to litigate and relitigate issues which have already been decided, however, may in the long run, be disadvantageous to the very people counsel wishes to help. There must be a finality to litigation. The trustees of the Jones Institute have acted pursuant to the terms and provisions of the last will and testament of Samuel Jones, and the actions of Surrogate Laurino in maintaining control and jurisdiction over the disposition of the fund insure that the petitioners will be adequately protected and that the intent of the testator will be carried out.
Inasmuch as the petition herein is being dismissed in its entirety, it is also the decision and order of this court that the lis pendens filed herein by the petitioners dated March 4, 1981 and filed in lis pendens Liber 269, page 149, is hereby canceled and discharged of record.